The Pa. Co. for Ins. on Lives & Granting Annuities v. Picher.

# THE PENNSYLVANIA COMPANY FOR INSURANCE ON LIVES AND GRANTING ANNUITIES, et al., Appellants, W. H. PICHER, Respondent.

Springfield Court of Appeals, February 14, 1921.

1. **TRUSTS: Trustee Entitled to Compensation for Services at Request of Beneficiaries, Unless There is Express Prohibition.** A trustee is entitled to reasonable compensation for services rendered at the request of the beneficiaries, where there is no expressed prohibition denying him compensation.

2. **PRINCIPAL AND AGENT: Agent Selling Stock and Subsequently Collecting Certificates of Indebtedness Held not Precluded from Charging Commissions on Collections.** Where a contract between the stockholders of a corporation, authorizing one of them to sell all the stock for a price payable in part in certificates of indebtedness, provided that neither the agent making the sale nor any other stockholder was to receive any compensation in or about the sale, such provision ceased when the sale was made, and the agreed price, including the certificates of indebtedness, delivered, and did not prevent the agent or another stockholder, subsequently collecting interest and principal of the certificates of indebtedness under subsequent agreements, from charging a commission on the amounts collected.

3. **TRUSTS: Second Trustee Held not Deprived of Compensation Because Prior Trustee had Waived Compensations.** Where stockholders, selling their stock for a price payable partly in certificates of indebtedness, authorized one of them to receive payments of the certificates, and, after his death, agreed that another should act as trustee, the fact that the stockholder first acting as trustee waived any right to compensation did not preclude the subsequent trustee from claiming pay for his services.

Appeal from Circuit Court of Jasper County.—*Hon. Joseph D. Perkins*, Judge.

AFFIRMED.

*H. S. Miller* for appellants.

(1) It is true that the case of Kent v. Foster, 22 Mo. App. 649, holds that in certain cases when a trusteeship has been created, that the law implies an obligation to pay a reasonable compensation. And likewise the case of Maginn v. Green, 67 Mo. App. 620, and other cases as well. However, in all those cases the facts were entirely different than in the case at bar, and we find a very respectable authority that holds that a trustee is not entitled to compensation *eo nomine,* and he is entitled to no compensation for his services unless there was some understanding to that effect when the trust was created. 17 N. Car. 195, and other cases. (2) We quote from the case of Sanitary Co. v. Reed, 179 Mo. App. 174, as follows: ''Corporations are, in a way, partnerships; the directors are themselves, under our law, members of the corporation, stockholders. Acting as directors they are more than mere agents for their fellow stockholders; they are their trustees in charge of a trust fund. They cannot charge or receive pay for any services rendered their co-stockholders—the *cestui que trust*—unless compensation for such services is provided for in its charter or authorized by a by-law or resolution of the board of directors before the services are rendered.'' (3) We quote from 39 Cyc., page 480, the following: "The English rule at common law is well settled that a trustee is not entitled to compensation for his personal or professional services in respect to his trusteeship in the absence of any provision in the order of court appointing him or of a contract or stipulation with the parties. This rule seems to have been enforced in this country as a rule of the English common law at an early period. The accepted rule in this country at the present time, however, is, in case the matter is not otherwise permitted by statute, for courts of equity to exercise a just discretion and make or withhold allowance as they consider the particular circumstances required.'' And again we

quote from 39 Cyc., page 483, as follows: "A trustee may waive his claim to compensation. What amounts to a waiver of commissions will be determined like all other questions of waiver, by the acts or omissions of the party entitled otherwise to claim them, etc. (citing authorities)."

*C. C. Spencer* and *A. E. Spencer*, for respondent.

(1) In Mumbach v. Nienhaus, 219 S. W. 354, our Supreme Court said: "Of course, the statute does not forever preclude an executrix from purchasing in good faith, and without previous arrangement, property she has formerly and finally sold as executrix. The 'mere circumstance of the subsequent sale by the purchaser' to the executrix 'is not sufficient to warrant the assertion that the sale to Rambousek was not made in good faith.' No presumption of collusion arises from that fact alone. Vasques et al. v. Richardson, 19 Mo. 101; West v. Waddill, 33 Ark. 575. According to these decisions, the mere fact of the purchase in this case is no evidence of collusion. At most, it cannot be held that such fact shows collusion as a matter of law." (2) Under the law, as declared in Missouri and elsewhere, even though defendant in making collections and distributions, be classed as a sort of trustee, he is entitled to reasonable compensation for his services rendered at the request of plaintiff and others. In Kemp v. Foster, 22 Mo. App. 649, the Kansas City Court of Appeals said: "Generally, a trustee is entitled to a reasonable compensation for his time, trouble and skill in managing the fund and executing the trust, unless it appears that it was the intention that no compensation should be charged." Citing 2 Perry on Trusts, sec. 917-918. The St. Louis Court of Appeals, in Maginnis v. Green, 67 Mo. App. at 620, said: "In England a trustee is held to act gratuitously unless the instrument creating the trust provides for his compensation. In America the general rule is that he will be allowed reasonable commissions if he has spent his

time in the management or preservation of the trust estate." St. Louis Court, in Wiegand v. Woerner, 155 Mo. App. 227-259, held that where trustees of a fund to be held for payment of an annuity received it on July 8th in the form of interest paying bonds and a certificate of deposit in an absolutely safe bank and were not required to give bond, and on August 5th, after the death of the annuitant, which occurred on July 24th, were asked to turn over the fund to the distributees, but refused to turn over the fund or any part of it, for the reason that part of it was in dispute, $500 was a reasonable allowance for their compensation. Here the right to some compensation was not seriously disputed, and the contest was over the amount thereof. To the same effect is case of Ladd v. Pigott, 215 Mo. 370. (3) A trustee can receive pay out of the trust fund for such services and expenditures only as are within the line of duties imposed upon him by the instrument creating the trust. Tracy v. Railroad, 13 Mo. App 295, affirmed in 84 Mo. 210. The Supreme Court of the United States plainly states the American rule, as follows: "In England courts of equity adhere to the principle, which had its origin in the Roman law, 'that a trustee shall not profit by his trust, and therefore that a trustee shall have no allowance for his care and trouble. A different rule prevails generally, if not universally, in this country. Here it is considered first and reasonable that a trustee should receive a fair compensation for his services, and in most cases it is gauged by a certain percentage on the amount of the estate." Barney v. Saunders, 16 How. (U. S.) 535, 541, 14 L. Ed. 1047, 1050 28 Am. & Engl. Ency. Law (2 Ed.), pp. 1032-1033, thus states the rule: "It is a fundamental principle of the English courts that trustees are not to be permitted to derive personal profit from the performance of the duties of the trust, and, hence, no compensation is allowed to them for personal services in the performance of their official duties, though involving personal trouble and loss of time, unless such compensation is provided for in the trust instrument, or by special contract. But

even in England the trustee is allowed indemnity for all necessary expenses, including losses and charges. The effect is much the same as if compensation was granted to him. Although formerly this doctrine was, and is at the present time, in the absence of statute, followed in some States, yet now in America and Canada, generally, a trustee, in the absence of any agreement or stipulation therefor, is allowed compensation by the court when he has faithfully discharged his duties." (4) Even a constructive trustee is entitled to compensation for managing property, where he is chargeable with the rents. Olson v. Lamb, 56 Neb. 104, 76 N. W. 433, 71 Am. St., Rep. 670; Cowing v. Howard, 46 Barb. (N. Y.) 579; Barney v. Saunders (U. S.), was followed in Rowland v. Maddock, 183 Mass. 364, 67 N. E. 347, 349, holding committee of creditors of absconding debtor, for benefit of themselves and other creditors, to recover and distribute debtor's property, are entitled to reasonable compensation for bringing back debtor from Canada, together with money, for services in distributing money, though committee were wrong in failing to render proper account and in paying gratuity to police. There is a suggestion occurring for the first time in appellants' printed brief that, in some way not disclosed, defendant has waived his right to compensation, if he ever had such right. The pleadings present no question of waiver, the evidence does not support any such claim, and appellant does not attempt to point out what constitutes the basis of the alleged waiver.

FARRINGTON, J.—Plaintiffs appeal from a judgment rendered in favor of defendant in a suit seeking to to recover the sum of $685.76, alleged to be wrongfully withheld by the defendant from plaintiffs. The cause was tried in the circuit court before the judge sitting as a jury upon the following agreed statement of facts:

"It is hereby agreed and stipulated by and between the parties hereto that a jury be and the same is hereby waived and that this cause shall be submitted to and decided by the court upon the following agreed statement of facts,

which shall be taken as and shall be the sole and only evidence in the case, to-wit:

## I.

On February 15, 1906, all of the stockholders of the Picher Lead- Company, a Missouri corporation, and amongst others the plaintiffs and the defendant herein, and Oliver H. Picher, entered into a written contract and made, executed and delivered their written contract, in and by which it was agreed and provided that said Oliver H. Picher was thereby authorized to sell and deliver all the capital stock of said Picher Lead Company for a price and sum therein specified and payable (1) a designated portion in cash, (2) another portion in notes, one-half due in one year and one-half due in two years from date with interest and secured by first mortage on the lands and works owned by said Picher Lead Company and (3) balance of $100,000 to be represented by certificates of indebtedness of the purchasers, carrying no personal liability of the maker or makers thereof and to be secured by ten sixty-sixths (10/66) of the then Picher Lead Company stock; that said notes were to bear interest from date at the rate of 6 per cent per annum, payable annually, with the provision that if the interest should not be paid annually the said stock should thereby become forfeited and become the property of the holders of said certificates of indebtedness. It was further provided in said contract that all dividends declared upon said stock so pledged as collateral security should be paid to the holders of said certificates of indebtedness, credited first upon any interest due thereon and the remainder upon the principal thereof, and that when the amount of dividends so paid should equal the balance so due upon said certificates of inbebtedness, or when the maker or makers thereof should pay the balance due thereon at any time the said stock should be returned to said maker or makers. It was further provided in said contract that in the event of such sale, the proceeds thereof, to-wit, the amount received in cash, in notes secured by mortgage and in notes secured by the stock as

aforesaid, should be distributed and delivered as therein specified. Said contract then provided for full distribution of all thereof; the estate of Joseph J. Solomon, deceased, to receive three-twentieths (3/20) thereof. Said contract further contained the following provisions:

'It is understood and agreed that neither the said Picher nor any other present owner of any interest in said Picher Lead Company, is to receive any compensation in or about said sale, directly or indirectly, or be in any manner interested in said purchase.'

'The said Picher' so mentioned was Oliver H. Picher.

### II.

Shortly following the delivery of said contract, the said Oliver H. Picher did sell and deliver all of the capital stock of the Picher Lead Company for the price and upon the terms and in accordance with said contract, and the portion of the purchase price to be paid in cash was so paid and distributed to the signers of said contract in accordance therewith, and to their holdings of stock; that the portion of the payment to be represented by notes secured by mortgage was so paid upon maturity of said secured notes, the mortgage released and the proceeds distributed amongst the stockholders according to the terms of the first mentioned contract; that the remainder of the purchase price, to-wit $100,000, was covered by the execution of certificates of indebtedness, as provided in the contract, said certificates being nine (9) in number and aggregating $100,000. three thereof being $15,000 each, three for $10,000 and three for $8,333.33, and each of the three purchasers executing one of each class of said certificates; and there was pledged and delivered to the said O. H. Picher as collateral security for the payment of said indebtedness 153 shares of the capital stock of the said Picher Lead Company; that upon execution of said certificates of indebtedness they were distributed amongst the selling stockholders in said Picher Lead Company, and for their portion thereof the plaintiffs received Certificate No. 1, signed by R. W. Evans, for the principal sum of $15,000; that the 153 shares of

stock pledged as collateral security for the payment of all of said certificates of indebtedness remained in the possession of the said Oliver H. Picher for the benefiit alike of all the holders of said certificates; and said Oliver H. Picher from time to time collected all dividends declared and paid on said shares and distributed same *pro rata* amongst said stockholders.

### III.

Under date November 24, 1908, the plaintiffs made, executed and delivered to said Oliver H. Picher their certain agreement, mentioning contract of February 15, 1906, and reciting that: 'Whereas, in pursuance of said agreement, the said Oliver H. Picher did sell and deliver all of the said capital stock at said price and upon said terms and has collected and received all proceeds of said sale, and has fully accounted for and paid to the undersigned (the plaintiffs) the full part and share of said proceeds due to the undersigned, the receipt whereof is hereby acknowledged.'

Said contract then provided as follows, to-wit:

'Now, therefore, the said Oliver H. Picher is hereby fully and finally released, acquitted, and discharged of all liability to the plaintiff in the premises and in and as to all his acts, and doings in the making of said sale, the collection, receipt and distribution of the proceeds thereof, and in and as to any trusteeship in the premises arising out of any of his said acts and doings, saving and excepting only that, whereas, a part of the proceeds of said sale consists of a series of nine certificates of indebtedness (which are then fully described).'

Said contract then provides as follows: to-wit:

'It is agreed that the said Oliver H. Picher shall continue to act as trustee to receive payments upon said certificates as therein provided and to hold the said one hundred and fifty-three (153) shares of the capital stock of said Picher Lead Company as security for the payment of said certificates as therein provided.'

## IV.

That under said last mentioned contract and similar contracts from the other former stockholders in the Picher Lead Company, said Oliver H. Picher continued to hold said stock so pledged as collateral security, and collected all dividends declared and paid thereon and distributed same to the stockholders *pro rata* in accordance with the first mentioned contract until the date of his death, october 2, 1912.

## V.

Thereafter, under date December 7, 1912, the plaintiffs herein and all other former stockholders in said Picher Lead Company executed and delivered to the defendant the following instrument, to-wit:

'It is hereby agreed by the undersigned for W. H. Picher to act as trustee to settle the accounts of Joseph J. Solomon, A. W. Wright, E. O. Bartlett, O. H. Picher and W. H. Picher, against the Picher Lead Company of Joplin, Missouri.'

That pursuant to said terms the defendant took possession of said 153 shares of stock and held the same and thereafter collected all dividends declared thereon and also received payments from the makers of said certificates of indebtedness, distributing such payments as made from time to time amongst the former stockholders entitled thereto in accordance with the first mentioned contract, until the final payment of the principal and interest of all said certificates of indebtedness. Whereupon the defendant made final distribution of the amount so collected by him, except as to the sum retained as compensation for his services, and surrendered all the certificates of stock to the makers of the said several certificates of indebtedness.

## VI.

In making final settlement with the various stockholders, the defendant deducted, as compensation for his said services, a commission of five per cent (5%) of the

amount of his collections, and the amount so retained and claimed by him as commission on the moneys due to the plaintiffs was $685.76, which amount was finally retained by the defendant March 17, 1917; that if, under the facts herein set forth and agreed upon, and under the law, the defendant is entitled to charge compensation for his said services, which the plaintiffs deny, then it is agreed that the charge of five per cent commission for his said services is a reasonable and just charge and a judgment should be rendered in favor of the defendant. On the other hand, if, under the facts as herein set forth and under the law, as contended by plaintiffs, and denied by the defendant, the defendant is not entitled to compensation for his said services, then the plaintiffs should have judgment for the sum of $685.76, with interest at six per cent per annum from March 17, 1917, and for costs.

### VII.

It is further admitted that the plaintiffs are trustees under the will of Joseph J. Solomon, deceased, and that said will was duly probated in the proper court having jurisdiction thereof in Philadelphia, Pennsylvania, in 1892; and that the plaintiffs are still acting as such trustees.

It is further admitted, subject to defendant's objection to the admissibility, competency and relevancy thereof (such objections to be made at the hearing), that during his lifetime the said Oliver H. Picher did not charge the plaintiffs any sum for the services rendered by him in collecting the payments made on said certificates of indebtedness as aforesaid, and made no charges whatsoever for any services rendered by him in reference to the matters aforesaid."

There is no contest here as to the correctness of the amount of money retained by the defendant, if he is entitled to anything.

The only questions raised on this appeal are, first, was the defendant, under the agreed statement of facts,

OCTOBER TERM, 1920.            335

The Pa. Co. for Ins. on Lives & Granting Annuities v. Picher.

entitled to charge any compensation for his services as a trustee; and second, did the court err in excluding the testimony showing that a former trustee, acting in the same capacity, had made no charge for similar services? The particular paragraphs of the contract which bear on the principal question to be determined, read as follows:

"It is understood and agreed that neither the said Picher nor any other present owner of any interest in said Picher Lead Company, is to receive any compensation in or about said sale, directly or indirectly, or be in any manner interested in said purchase." which was contained in the original contract of sale of the property, and the following provisions in a contract of November 24, 1908:

"Whereas, in pursuance of said agreement, the said Oliver H. Picher did sell and deliver all of the said capital stock at said price and upon said terms and has collected and received all the proceeds of said sale, and has fully accounted for and paid to the undersigned (the plaintiffs) the full part and share of said proceeds due to the undersigned, the receipt whereof is hereby acknowledged.

Now, therefore, the said Oliver H. Picher is hereby fully and finally released, acquitted and discharged of all liability to the plaintiff in the premises and in and as to all his acts, and doings in the making of said sale, the collection, receipt and distribution of the proceeds thereof, and in and as to any trusteeship in the premises arising out of any of his said acts and doings, saving and excepting only that, whereas, a part of the proceeds of said sale consists of a series of nine certificates of indebtedness (which are then fully described).

It is agreed that the said Oliver H. Picher shall continue to act as trustee to receive payments upon said certificates as therein provided and to hold the said one hundred and fifty-three (153) shares of the capital stock of said Picher Lead Company as security, for the

payment of said certificates as therein provided."
and a provision in a third instrument dated December 7,
1912, as follows:

"It is hereby agreed by the undersigned for W. H.
Picher to act as trustee to settle the accounts of Joseph
J. Solomon, A. W. Wright, E. O. Bartlett, O. H. Picher
and W. H. Picher, against the Picher Lead Company of
Joplin, Missouri.

There are no cases cited, or which we have been
able to find, that give any more than general outlines
of the law to be applied to this case, and its decision
must necessarily depend upon the construction and in-
terpretation to be given on the clauses in the contracts
in this particular case.

It is settled law in Missouri and in the United
States that a trustee will be entitled to reasonable com-
pensation for services rendered at the request of the
beneficiaries where there is no expressed prohibition
denying him compensation for his services. [See Kemp
v. Foster, 22 Mo. App. 649; 2 Perry on Trusts, secs.
917, 918; Maginnis v. Green, 67 Mo. App. 620; Tracy
v. Railroad, 13 Mo. App. 295, affirmed in 84 Mo. 210;
Barney v. Saunders, 16 Howard, 535, 14 Law Ed. 1047;
28 Amer. & Eng. Ency. Law (2 Ed.), 1032, 1035; 39
Cyc. 480.]

The circuit court interpreted the clause prohibiting
any owners of stock in the Picher Lead Company from
receiving compensation in and about said sale directly
or indirectly, or to be in any manner interested in said
purchase as applying to the transfer and sale of the
stock and property of the company; and that when the
cash part of the purchase price was paid, the notes were
executed, and the notes secured by certificates were ex-
ecuted, the sale was in effect completed and all that was
required from that time on was the deferred payment
on the purchase price, and in carrying out this plan of
payment is was necessary and convenient that some one
hold the certificates, credit the dividends and receive

the payment due under the sale which had been made for the benefit of the various sellers or parties in interest who owned different amounts of stock in the company. In other words, that the provision of the contract prohibiting compensation to stockholders ceased as soon as the bargain had been struck and the payment in cash and credits had passed from one party to the other.

In speaking of the essential elements of a sale, Mechem on Sales, Vol. 1, sec. 4, lays down the rule that a third element also, often appearing with others, is that of payment. But payment is by no means a necessary concomitant of the transfer of the title; for the property may be paid for before the title passes, or contemporaneously with its transfer, or at any time thereafter. Also, at section 493, it is held that it is not at all essential to the transfer of the title that the price shall have been paid.

Benjamin on Sales, in discussing the price, which is a necessary element of every sale, holds that it must consist of either money paid or promised. [See 35 Cyc., 322.]

We agree, therefore, with the trial court in the holding that the sale referred to in the original contract was an executed sale, the price having been fixed and the title to the thing sold passed. That being true, such a provision would not prevent a stockholder who sold at that time from ever afterwards dealing with the stock or property which was the subject-matter of the sale. In other wards, the clause in the contract prohibiting compensation to the stockholders who were selling merely provided that they could receive no benefits as a purchaser or accept compensation as a seller that all of the sellers did not share in equally, and when the sale was executed and consummated, which it was when the stock was transferred, the cash and credits passed, the prohibition ended so far as it applied to the property which was the subject-matter of that sale.

The trusteeship placed in Oliver H. Picher was not in legal sense a relation entering into the sale, but rather was a necessary relation which grew out of the fact that a sale had been made and executed, and therefore any work that he did, or any compensation that might be due him in such trust capacity was not work or compensation directly or indirectly connected with the sale. It was work which sprang up out of conditions created after the sale was executed and hence the prohibition did not apply to him in that capacity.

After the death of Oliver H. Picher, the first trustee, the plantiff here, with others, executed the instrument of December 7, 1912, which designated the defendant here to act as trustee in settlement of the accounts. His services as such trustee were not rendered in the execution of the sale made in 1906, but were services rendered in a contract for the payment of certain money, and while it was a service which grew out of the fact that a sale had been made, it was not a service rendered directly or indirectly in and about the sale.

There being no question as to the correctness of the value placed on the services in the allowance made in the judgment, and there being no prohibition against this trustee receiving compensation for those services, under the law in this State he is entitled to reasonable compensation. Having arrived at this result, it is unnecessary to discuss the exclusion of testimony offered by the plaintiff because a waiver of Oliver Picher's right to compensation would not be binding upon the defendant's right to claim pay for his services. We conclude that the judgment is for the right party, and it is affirmed. *Bradley, J.,* concurs. *Cox, P. J.,* not sitting.